P. H. YOUNG *et ux.* V. CHARLES E. GIBSON.*

No. 15,747.

SYLLABUS BY THE COURT.

1. TAX DEEDS—*Irregularities—Rights of Holder of Certificate— Duty of County Clerk.* "If all the proceedings up to the execution of a tax deed are regular and legal, the holder of the certificate is entitled to a deed in legal form, and carrying that *prima facie* evidence of the regularity of all prior proceedings which belongs to a statutory deed; and if through mistake or inadvertence a different deed, and one substantially departing from the statutory form, has been executed, the county clerk can be compelled by mandamus [to], and may without it, execute and deliver a deed in correct and statutory form. In other words, neither the power nor the duty of the county clerk is exhausted by the execution of an irregular and improper deed." (*Douglass v. Nuzum*, 16 Kan. 515, 525.)

2. —— *Limitation upon Time of Issuance after Tax Sale.* Section 7714 of the General Statutes of 1901 was not designed to, and does not, provide any limitation of time within which a valid tax deed may be issued upon a valid sale of land by a county treasurer for delinquent taxes, an invalid deed having been issued, through mistake, by the county clerk.

3. —— *Same.* The limitation provided by section 18 of the civil code is the only restriction of the time within which the purchaser may maintain an action against the county clerk to compel the issuance of a second tax deed, and it is five years after the issuance of the defective deed.

4. —— *Same.* Within such five years a second tax deed, if otherwise valid, is not invalid by reason of the time of its issuance.

5. —— *Second Deed to Correct Defects.* Where all the tax proceedings up to the execution of a tax deed are regular and legal, and the county clerk through mistake or inadvertence issues a tax deed defective in form or substance, and a second tax deed is thereafter issued on the same sale by the county clerk to correct the former error, it is proper and desirable it should be noted on such second deed that it is issued to correct the former deed; but as the function of the second deed

* NOTE.—A rehearing has been allowed in this case and a second opinion will be filed, which will be reported in volume 81.

is apparent from the circumstances, such notation is not a prerequisite to the validity of such second deed or to its admission as evidence in court.

Error from Ford district court; GORDON L. FINLEY, judge. Opinion filed June 5, 1909. Reversed.

### STATEMENT.

CHARLES E. GIBSON brought this suit, August 2, 1906, to foreclose a mortgage on a quarter-section of land in Ford county, Kansas. The defendants answered setting up title to the land. Their title is based upon a tax deed, or rather two tax deeds, which were pleaded and offered in evidence. The first deed was issued October 1, 1892, and recorded October 3, 1892. It was based upon a regular certificate of sale in 1889 for the taxes of 1888, and shows the payment of the taxes by the purchaser for the years 1889, 1890 and 1891. This deed shows a sale in gross of this quarter-section of land, with another adjoining.

On the 18th of April, 1894, the purchaser procured another tax deed (based upon the same tax sale) for the same land, with other tracts. This deed was recorded April 21, 1894. It follows the statutory form strictly, but does not in any wise refer to the previous deed of October 1, 1892.

The plaintiff replied that the last tax deed was void upon its face and did not vest any title in the defendants, for the reason that it was issued more than four years after the tax sale upon which it was based.

It was admitted on the trial that the plaintiff's mortgage was valid and a subsisting lien upon the premises unless devested by the tax deed. Also, that the land in controversy was lawfully assessed for taxes in the year 1888; that taxes were duly levied thereon for that year; that at the annual tax sale in September, 1889, the taxes not having been paid, the county treasurer sold the land to one Hoover for the sum of $15.54, which was the total amount of taxes, interest and

charges due upon the land for the year 1888; that the treasurer thereupon issued a tax-sale certificate to Hoover, who thereafter paid the subsequeht taxes for the years 1889, 1890 and 1891, and the same were indorsed upon his certificate; that on October 1, 1892, the county clerk duly executed and delivered to Hoover a tax deed to the land, based on the sale for taxes; that the tax deed was, on the 3d day of October, 1892, duly recorded; that on the 18th day of April, 1894, the county clerk duly executed and delivered to Hoover another tax deed for the same land, upon the same sale for taxes; that by mesne conveyances the land was conveyed from Hoover to P. H. Young (one of the defendants), who for more than five years prior to the commencement of this suit had been in the continuous and uninterrupted possession thereof under such tax deeds and conveyances.

After these admissions the defendants offered in evidence, separately, the tax deeds to Hoover dated respectively October 1, 1892, and April 18, 1894. The plaintiff objected to the introduction of the first tax deed on the ground that the rights of the tax deed holder were merged in the second deed, and objected to the second deed for the reason that it showed on its face that it was issued more than four years after the date of the sale.

Pending the ruling upon these objections the defendants offered to prove by Hoover, and by the county treasurer and the records of his office, that at the tax sale in 1889 Hoover purchased several tracts of land, including the land in question, and there was issued to him a tax-sale certificate therefor, showing upon its face a separate sale for each tract; that the county clerk, by mistake or inadvertence, included the land in controversy in a deed with another tract, sold separately therefrom and for a different consideration, causing the deed dated October 1, 1892, to state a sale in gross for the lands; that thereafter Hoover, to cor-

rect the error, demanded of and received from the county clerk the tax deed dated April 18, 1894.

The plaintiff admitted that Hoover and the county treasurer would testify to these facts, and that the books and records of the office of the county treasurer would show that Hoover purchased at the sale several tracts, each for a different consideration, including the one in controversy, and that he was entitled to a tax deed conveying such lands as separate and distinct tracts and showing a separate and distinct sale of each tract. The plaintiff, however, objected to the introduction of all this evidence, as incompetent, irrelevant and immaterial, which objection the court sustained. No further evidence was offered by either party.

The court held that all rights acquired under the first deed were merged in the second, and that the second deed, having been issued on the sale and more than four years thereafter, and containing no recital to toll the statute concerning floating liens or that it was issued to take the place of the first deed, was void and conveyed no title. Judgment was thereupon entered setting aside the tax deeds, but granting Young a prior lien for the amount of taxes paid, and decreeing to the plaintiff the foreclosure of the mortgage.

*E. H. Madison,* and *L. A. Madison,* for the plaintiffs in error.

*Thomas A. Scates,* and *Albert Watkins,* for the defendant in error.

The opinion of the court was delivered by

SMITH, J.: The admissions of fact in this case leave nothing but a question of law to be determined. After the mutual admission of the detailed facts recited in the statement the defendants offered in evidence the second tax deed, a copy of which was attached to the answer, and the execution of which was not denied in the reply under oath. The execution of the deed was

therefore admitted in the form and with the contents as pleaded. (Civ. Code, § 108.) It was not necessary, therefore, to introduce this deed in evidence. Pending the ruling on the objection to the introduction of the deed in evidence, however, the plaintiff expressly admitted "that the books and records of the office of the county treasurer would show that Hoover purchased at said sale several tracts, including the one in controversy, each for a different consideration, and that he was entitled to a tax deed conveying said lands as separate and distinct tracts and showing a separate and distinct sale of each tract." This is equivalent to the admission of the facts as true which it is admitted the records show. The records import verity and are not subject to contradiction. There is a marked difference between an admission that a witness would testify to a certain fact and an admission that a public record, and the only proper public record, would show the fact. The witness may be contradicted or may not be believed. The public record of the county treasurer is in the very nature of the case the best, if not the only, evidence of the facts it is admitted it would show, and, at least in the absence of any suggestion of error or fraud therein, should be taken as conclusive evidence of such facts.

The court evidently recognized these as established facts and correctly held that all rights acquired under the first tax deed were merged in the second deed. (Gen. Stat. 1901, § 7714; *Tweedell v. Warner,* 43 Kan. 597.) The court, however, held, following the dictum in *Park v. Hetherington,* 9 Kan. App. 309, 312, 313, that section 7714, *supra,* being the first section of an act entitled "An act to avoid floating liens on real estate," adopted in 1881, limits the time for obtaining a valid tax deed to four years from the date of the sale, at least in the absence of some allegation or recital in the second deed showing that it was issued to correct or take the place of a first tax deed issued on the same tax sale. In this the court erred.

Section 7714 of the General Statutes of 1901 has no reference whatever to the time of issuing a tax deed or to the validity of a tax deed. This section was enacted as section 1 of chapter 114 of the Laws of 1881. The chapter was entitled "An act to avoid floating liens on real estate," and the whole act is still in force, and has been republished under that title in all subsequent compilations of the statutes. Theretofore a person could acquire a tax certificate on a tract of land and carry it indefinitely, at the enormous rate of interest then allowed by law. Probably trouble from this source led to the enactment of this section. As before said, it has no reference to the time within which a tax deed must be issued after the sale to be valid. The deed is issued in accordance with the contract of purchase and sale, the law being a part of the contract, and neither this nor any other statute expressly places any limitation upon the issuance of such deed, except that it can not be issued until three years after the sale. But the general statute of limitations, as will be seen hereinafter, applies to the time within which an action may be brought to compel the issuance of such deed. To preserve the lien for taxes on the land a tax deed must be taken out within four years from the date of the sale. But it is provided in section 4 of the floating-lien statute (Gen. Stat. 1901, § 7717), in effect, that an invalid tax deed shall preserve the lien.

The only justification for the dictum in *Park v. Hetherington,* 9 Kan. App. 309, 312, 313, (see, also, *Tweedell v. Warner,* 43 Kan. 597, 604) is that a tax deed could not be issued after the lien for the taxes had expired. Assuming the correctness of this proposition, if the lien has once been perpetuated by taking out an invalid deed, when thereafter does the lien expire? When thereafter, if the purchaser be entitled thereto, can a valid tax deed be legally issued. No provision of the statute, it is believed, answers either question.

We simply hold in this case that the second tax deed may lawfully be issued by the county clerk during such time at least as the purchaser may maintain an action to compel the issuance of the deed.

An excerpt from the opinion of Mr. Justice Brewer in *Douglass v. Nuzum,* 16 Kan. 515, seems especially applicable to the facts in this case, as it is admitted herein that all the steps in the matter of the taxation of the land in question up to and including the sale were legal and had been taken in the manner prescribed by statute. The excerpt reads:

"If all the proceedings up to the execution of a tax deed are regular and legal, the holder of the certificate is entitled to a deed in legal form, and carrying that *prima facie* evidence of the regularity of all prior proceedings which belong to a statutory deed; and if through mistake or inadvertence a different deed, and one substantially departing from the statutory form, has been executed, the county clerk can be compelled by mandamus [to], and may without it, execute and deliver a deed in correct and statutory form. In other words, neither the power nor the duty of the county clerk is exhausted by the execution of an irregular and improper deed. The holder of the tax claims is entitled to have the various steps and processes by which these claims are matured into perfect titles properly and legally taken and done by the various officers to whom under the law they are respectively assigned." (Page 525.)

Suppose that in this case the county clerk had refused, on the application of the purchaser, to execute a deed in conformity to law and to the rights of the purchaser: what would be the limitation of time within which the purchaser could bring an action in mandamus to compel the clerk to perform his duty? There is no special limitation provided in such case; hence, as it is a civil action, the limitation must be found in article 3 of the civil code. Subdivision 6 of section 18 of the code is the only limitation applicable, and it is five years from the issuance of the defective deed. His cause of

action for mandamus would arise after the making of the first deed and upon the refusal of the clerk on demand to execute a deed in conformity with law, and he is entitled to five years thereafter in which to bring his action in mandamus. If the county clerk could be compelled to issue a valid tax deed more than four years after the tax sale (and it would be ridiculous to say that he could be compelled to issue an invalid deed), he might do so without any action within that time at least.

While it is proper and desirable to note upon a second tax deed, issued to correct an erroneous deed, the fact that it is so issued, the purpose and function of the second deed must in every case be apparent, from the circumstance that the two deeds are issued upon the same sale; and it is not a prerequisite to the validity of the second deed or to its admissibility in evidence in court that such notation be made thereon.

All the facts requisite to establish the validity of the second tax deed were admitted by the plaintiff, and as it is herein held that such deed is not invalid by reason of the time of its issuance the judgment of the court is reversed, with instructions to render a judgment in favor of the defendants.